Joanne GLUS et al., Plaintiffs,

v.

G. C. MURPHY COMPANY, Defendant, Appellee-Cross Appellant,

and

Retail, Wholesale and Department Store Union, Local # 940, Defendant,

and

International Union of Wholesale and Department Store Union, AFL–CIO, Defendant, Appellant-Cross Appellee.

Nos. 76–1864, 76–1865.

United States Court of Appeals, Third Circuit.

Argued Feb. 22, 1977.

Decided Aug. 8, 1977.

As Amended Nov. 9, 1977.

Robert Markewich, Markewich, Rosenhaus, Markewich & Friedman, New York City, for Joanne Glus et al., plaintiffs.

J. M. Maurizi, Balzarini, Walsh & Maurizi, Pittsburgh, Pa., for appellant-cross appellee, Intern. Union of Wholesale and Dept. Store Union, AFL–CIO.

Robert H. Stevenson, Anderson, Moreland & Bush, Pittsburgh, Pa., for appellee-cross appellant, G. C. Murphy Co.

Before ADAMS, BIGGS and HUNTER, Circuit Judges.

OPINION OF THE COURT

BIGGS, Circuit Judge.

This case raises a number of difficult questions regarding contribution between the defendants in actions brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e et seq. and the Equal Pay Act of 1963 (Equal Pay Act), 29 U.S.C. §§ 201 et seq.

## I. FACTS

The appeal and cross-appeal before us began as a class action brought by 19 named plaintiffs on behalf of all females in the employ of appellee-cross appellant G. C. Murphy Co. (Murphy) since 1964. Named as defendants were Murphy; the Retail, Wholesale and Department Store Union, Local # 940 (Local 940); and the International Union of Wholesale and Department Store Union, AFL–CIO (International). In the first count of their complaint plaintiffs alleged, inter alia, that Murphy, Local 940, and the International had violated Title VII by maintaining under collective bargaining agreements entered into by the defendant labor organizations and Murphy separate job classifications, pay scales, and seniority systems for male and female employees of Murphy's McKeesport, Pennsylvania, warehouse.

In the second count of their complaint plaintiffs alleged that Local 940 and the International violated their duty of fair representation imposed upon them by the National Labor Relations Act and the Labor-Management-Relations Act in acquiescing and joining in the discriminatory practices which formed the basis of their Title VII complaint.

After Murphy, the International and Local 940 filed answers to the plaintiffs' complaint. Murphy filed a cross claim on August 19, 1971, for a judgment that if there be liability to the plaintiffs the defendant labor organizations were solely liable and that judgment be entered for Murphy over and against Local 940 and the International for any amount recovered by the plaintiffs against Murphy. The basis of

Murphy's cross claim was that the allegedly discriminatory practices were the result of demands made by the unions in the course of collective bargaining and were acceded to in good faith by Murphy.

On July 14, 1972 the district court granted class status and certified the class as being "all females who were employed at the G. C. Murphy Company warehouse and who were included in the unit covered by the labor union contracts at any time between July 1, 1965 and June 30, 1971." At the same time the court approved a notice of settlement between Murphy and the plaintiffs. The court further ordered a hearing concerning the proposed settlement on October 2, 1972 which "any person may attend to inform the Court of any matter pertaining to these proceedings . . . ."

The terms of the settlement provided that Murphy would pay $548,000 to the plaintiffs and an additional $100,000 in attorneys' fees to plaintiffs' counsel. The payment was to be made in three instalments with 6 per cent interest on the deferred payments. Also, pursuant to the settlement agreement plaintiffs amended their complaint to include a claim only against Murphy for violation of the Equal Pay Act of 1963. (68a). $100,000 of the $548,000 settlement was allocated to the Equal Pay Act claim. The remaining $448,-000 was allocated to the Title VII claim.

A hearing was held on October 2, 1972 concerning the proposed settlement. Present at the hearing, in addition to plaintiffs' and Murphy's counsel, was Joseph M. Maurizi, Esquire, a member of the bar, representing both Local 940 and the International. The Court inquired whether there was any objection to the settlement. Mr. Maurizi did not object.

Murphy proceeded on its claim for contribution, and ultimately settled its claim against Local 940 for $4,146, the total amount in Local 940's treasury.

Trial was held on the remaining issue, Murphy's claim for contribution against the International and Teamster's Local 249.[1]

Upon the conclusion of the trial the district court found both Murphy and the International equally responsible for the complained of sex discrimination. The district court based its finding on evidence that the International participated in the collective bargaining of the 1965 and 1968 contracts through one Burberg, the International Representative. Burberg, as the "International Representative" signed the collective bargaining agreement;[2] and also participated in Local 940's affairs including grievance procedures. With regard to Burberg's participation in the negotiations of the discriminatory agreements the district court found:

"Burberg may be appropriately characterized as the most experienced person on the Union's side of the 1965 and 1968 negotiating table. (Tr. 204) [410a]. It may also be concluded that because Local 940 did not have an attorney who participated in the 1965 and 1968 negotiations, the union turned to Burberg for counseling on the legality of the negotiations. (Tr. 206, 268) [413a, 475a]. The attorney counseling Murphy at the contract negotiations occasionally met privately with Burberg to discuss union matters. (Tr. 206) [413a]. And during the negotiations, union officials would privately consult Burberg for his opinion on the various aspects of the negotiations (Tr. 268)

---

1. Teamster's Local 249 was the successor collective bargaining agent of Local 940. A class action was brought against Murphy and Local 249 for *inter alia*, sex discrimination in violation of Title VII based on the failure to retroactively rectify disparate pay scales between Murphy's male and female employees and Local 249's refusal to accept Murphy's offer of retroactive parity. Murphy's settlement with the plaintiffs in the instant case included a settlement with the plaintiffs in the action involving Title VII. The district court joined the two cases for the purpose of Murphy's action for contribution. There was a judgment for Murphy (124a *et seq.*). Local 249 has appealed. Murphy was cross-appealed. For disposition of this case, see order in *Denicola v. G. C. Murphy*, 562 F.2d 889 (3d Cir., filed Aug. 8, 1977).

2. In addition to Burberg the contracts were signed by representatives of Murphy and Local 940.

[475a], and Burberg's opinion generally was adopted by the union at the negotiation table."

141a–142a.[3] The district court further found Burberg to be acting within the scope of his agency or representative status of the International. 142a–145a.

The court determined that Murphy and the Labor organizations, the International and Local 940, which had settled, were equally at fault, and so apportioned the Title VII share of the settlement with the plaintiffs. 176a.[4] The district court excluded the $100,000 from the amount to be allocated for contribution ruling that a labor organization could not be liable under the Equal Pay Act. The court found the settlement between Murphy and the plaintiffs to span a period of time beginning July 1, 1965 and ending June 30, 1971, a period of 72 months. 177a. The court found the union collectively liable for $224,000, 50% of the plaintiffs' $448,000 Title VII recovery. *Id.* The International's share of the responsibility for the Title VII recovery was $67/72$ since it was for 67 months of the 72 month period that the International and Local 940 represented Murphy's employees. *Id.* Thus, the International's liability for the Title VII claim was $208,444, or $67/72$'s of $224,000. *Id.* For the purpose of contribution attorneys' fees were apportioned. The district court determined that of the $100,000 attorneys' fees $81,752 was attributable to the Title VII claims. This was done by taking the ratio of the Title VII recovery, or $448,000, to total recovery, or $548,000, and the total amount of attorneys' fees:

$$\frac{\text{Title VII Recovery (\$448,000)}}{\text{Total Recovery (\$548,000)}} = \frac{\text{Title VII Attorneys' Fees}}{\text{Total Attorneys' Fees (\$100,000)}}$$

*Id.* The International's contribution to the attorneys' fees for the Title VII recovery

was based on the same percentage, $67/72$ used to determine its Title VII contribution. Thus, the court below found the International liable for $38,039, $67/72$'s of $40,876, 50% of the Title VII attorneys' fees, or $38,039. Credited against the International's liability was the $4,146 settlement Murphy received from Local 940. A judgment in favor of Murphy and against the International was entered in the sum of $242,337 on April 29, 1976.[5]

## II.  ISSUES OF LAW

### A.  Introduction

The International in its appeal and Murphy in its cross-appeal have raised a number of questions regarding the disposition of the case in the district court.

The first issue raised on appeal by the International concerns the question of whether the district court had subject matter jurisdiction over Murphy's claim for contribution from the International under Title VII. The International contends that since it had not been named by the plaintiffs in their complaint to the Equal Employment Opportunity Commission (EEOC) the district court lacked subject matter jurisdiction to proceed with Murphy's cross-claim. This problem recently came to the attention of this Court in *Canavan v. Beneficial Finance Corp.,* 553 F.2d 860 (3d Cir., filed Mar. 23, 1977). Although the *Canavan* Court discussed various theories of jurisdiction it was not able on the record before it to reach full resolution of the jurisdictional issue.

Murphy in its cross-appeal has raised the issue of whether the district court erred in refusing to allow contribution for its liability under the Equal Pay Act of 1963, 29 U.S.C. §§ 201 *et seq.*

---

3. Judge Scalera's opinion has not been reported for publication.

4. In its brief Murphy challenged the district court's allocation of $100,000 of the $548,000 as arbitrary. At oral argument in this court Murphy abandoned this position.

5. A judgment in favor of Murphy and against Teamster's Local 249 for the sum of $18,393

was also entered. The $18,393 represented contribution of $15,556 for Title VII violations and $2,837 in attorneys' fees. $15,556 constitutes $5/72$ of 50% of the Title VII settlement, while $2,837 represents $5/72$ of 50% of the $100,000 attorneys' fees which were apportioned to the Title VII recovery. *See Denicola v. G. C. Murphy Co., supra.*

B. Jurisdictional Issue

■■■ We begin with the well established doctrine that the requirements set forth in 706(f)(1) of Title VII [6] are jurisdictional. See *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 n. 8 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). It is also established doctrine that a charge must be filed against a party with the EEOC before an action in the district court can be commenced. *Id.; EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1092–93 (6th Cir. 1974); *Le Beau v. Libbey-Owens-Ford Co.*, 484 F.2d 798, 799 (7th Cir. 1973); *Textile Workers, Local 179 v. Federal Paper Stock Co.*, 461 F.2d 849, 851 (8th Cir. 1972); *Jefferson v. Peerless Pumps Hydrodynamic*, 456 F.2d 1359 (9th Cir. 1972); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970).

The International argues that the district court was without jurisdiction to hear Murphy's cross-claim for contribution because the plaintiff failed to charge the International before the EEOC. Murphy disputes this contention on three grounds. 1) The International was, in fact, named in the plaintiff's charge to the EEOC; 2) It was unnecessary for the plaintiffs to name the International because a charge was filed against the International's agent Local 940; and 3) The Federal Rules of Civil Procedure confers jurisdiction upon the district court to hear Murphy's cross-claim.

We turn first to the opinion of the district court. The district court held that it had subject matter jurisdiction over Murphy's cross-claim for contribution against the International relying upon *Torockio v. Chamberlain Mfg. Co.*, 51 F.R.D. 517 (W.D. Pa.1970), written by then District, now Circuit, Judge Weis.

In *Torockio,* plaintiff charged in a complaint to the EEOC that her employer and union local engaged in sex discrimination. She ultimately brought suit in district court against the local and the employer. The employer sought to add either under F.R. Civ.P. 14 or 19 as a defendant the international union which was signatory to the labor contract which was an important aspect of the plaintiff's case. The International, through the Local, objected to its addition into the proceedings because it had not been named in the complaint to the EEOC. The district court, although recognizing the line of cases holding that plaintiff cannot sue under Title VII unless the defendant had been charged in a complaint to the EEOC, nevertheless ordered the International joined.

The court noted:

"There can be no quarrel with the desirability of such a procedure or the necessity of enforcing compliance by the parties. The situation presented here, however, is somewhat different. It is not the plaintiffs who seek to join the additional party; it is one of the defendants which was not given or could not be given such a right before the Commission. In essence, the question is whether the Civil Rights Act by implication deprives the defendants of their very valuable rights under the Federal Rules of Civil Procedure to have a resolution of all facets of the dispute in one proceeding—the 'just, speedy and inexpensive determination of every action' as Rule 1 phrases it.

"We find nothing in the Civil Rights Act which would supplant the Rules of Civil Procedure in suits under the Act which are in the courts.

\*   \*   \*   \*   \*   \*

6. Section 706(f)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(1) provides: "If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent . . . named in the charge . . . . If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if . . . the Commission has not filed a civil action under this section or . . . entered into a conciliation agreement . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought *against the respondent named in the charge* (A) by the person claiming to be aggrieved . . . ." (Emphasis added).

"We conclude, therefore, that there is no conflict between the jurisdictional requirements of the Act requiring the plaintiff to name all potential defendants as respondents in the administrative proceedings and the Rules of Civil Procedure which allow the defendants to bring appropriate parties into the case once suit has been filed in the district court."

*Id.* at 518–519.

The district court in the instant case reasoned that if the plaintiffs failed to name the International in its complaint under *Torockio* Murphy could have impleaded the International. The court noted that Murphy, like the employer in *Torockio,* was unable to join the International as a party before the EEOC, and concluded, "The fact that the International may have not been named before the EEOC does not preclude this court from exercising subject matter jurisdiction over it where its joinder could be accomplished through Rule 14 if it had not been named as a defendant and, more importantly, where its presence is essential to the disposition of the remaining issue in this lawsuit—Murphy's right of contribution from the International." [7]

■ It seems almost unnecessary to state that the Federal Rules of Civil Procedure cannot be used to expand the subject matter jurisdiction of the district courts. *See* F.R.Civ.P. 82 which provides that the Federal Rules of Civil Procedure "shall not be construed to extend or limit the jurisdiction of the United States district courts . . ." [8] We have great difficulty with a statutory scheme of federal subject matter jurisdiction being construed as to make it consistent with the Federal Rules of Civil Procedure. We recognize, as did Judge Weis in his opinion in *Torockio,* that there is a great interest in "a resolution of all facets of the dispute in one proceeding." *Torockio, su-*

*pra,* at 519. However, as the Supreme Court has cautioned:

" 'The value of efficiency in the disposition of law suits by avoiding multiplicity may be readily conceded, but that is not the only consideration a federal court should take into account in assessing the presence or absence of jurisdiction.' "

*Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976), quoting *Kenrose Mfg. Co. v. Fred Whitaker Co.,* 512 F.2d 890, 894 (4th Cir. 1972).

At oral argument Murphy's counsel attempted to characterize the district court's jurisdiction over its cross claim as "ancillary jurisdiction." We take it that counsel considered that there was jurisdiction as between Murphy and the International or the plaintiffs and the International because it arose from the same transaction as did the plaintiffs' claim against Murphy for which there was subject matter jurisdiction.

■ Murphy's contention seems to be an attempt to deduce a theoretical foundation for finding subject matter jurisdiction without direct reliance upon the Federal Rules. Although subject matter jurisdiction cannot be expanded by the Federal Rules it is well established that the doctrine of ancillary jurisdiction may be applied to a cross-claim brought pursuant to F.R.Civ.P. 13(g) [9] or impleader under F.R.Civ.P. 14. [10]

■ Ancillary jurisdiction is based upon the concept that once the court has jurisdiction over the claim it may also adjudicate claims arising from the same transaction or occurrence without an independent basis for jurisdiction.

■ We cannot at this time rest our decision on ancillary jurisdiction for two reasons. First, in *Aldinger v. Howard, supra,* the Supreme Court cast grave doubts whether ancillary jurisdiction may be ex-

---

**7.** Opinion of the district court, 138a.

**8.** *Cf. FDIC v. Greenberg,* 487 F.2d 9, 12 (3d Cir. 1973) (F.R.Civ.P. 4(e) does not limit federal venue for quasi-in-rem actions).

**9.** *See* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1433, at 177 (1971).

**10.** *See id.* § 1444, at 215.

tended to situations where there is no independent basis for subject matter jurisdiction over a party.[11] We recognize, however, that *Aldinger* did deal with pendent jurisdiction and could be constructed as being limited to 42 U.S.C. § 1983, 28 U.S.C. § 1343(3) contexts. Second, this case does not present either of the typical situations for ancillary jurisdiction. First, it was the plaintiffs that named the International in their complaint and not Murphy impleading under Rule 14. Second, if the International was improperly brought into the action by the plaintiffs, it is doubtful whether the International could be considered a "co-party" for the purposes of F.R.Civ.P. 13(g).[12]

We cannot accept ancillary jurisdiction as applicable in the instant case and in our opinion the Federal Rules of Civil Procedure cannot expand the jurisdiction of the district court. It is necessary, therefore, to consider Murphy's contention that the district court had subject matter jurisdiction over its cross-claim against the International on the grounds that the International had, in fact, been named in the plaintiffs' complaint to the EEOC. Murphy also argues that it was necessary for the plaintiffs to name the International because a charge was filed with the EEOC against the International's agent Local 940.

We first address ourselves to Murphy's contention that, in fact, the International had been named in the plaintiffs' complaint to the EEOC. In its opinion, the district court discussed this issue but was unable to reach a satisfactory resolution of the dispute, deciding instead that it was unnecessary for the International to be charged.

■ The district court made no finding of fact as to whether the International was named in the charge to the EEOC. (132a). It is well established appellate procedure that when a district court fails to make a necessary finding of fact the Court of Appeals will be required to remand the case unless an alternative means to reach a full resolution is available. *See* 5A Moore's Federal Practice, ¶ 52.06[2]. Since, as indicated above, this Court disagrees with the district court's resolution of the jurisdictional issue, we believe that the factual dispute should be resolved by the district court, unless other grounds set out hereinafter suffice.

Murphy next argues that it was unnecessary for the plaintiffs to name International in a complaint to the EEOC because they filed a charge against Local 940, who, Murphy contends is an agent of the International.

The district court reached Murphy's argument based on the agency theory but concluded it was unable to base jurisdiction on agency. *See* 133a–134a. The district court stated that it would not be necessary to name a party before the EEOC if 1) there was substantial, if not complete identity of the parties, or 2) the unnamed had an opportunity to actually engage in the conciliation process. The court found neither exception present in the instant case.[13] While we can perceive no fault in the findings, we conclude that sole reliance upon such factors is too strict. *See Canavan v. Beneficial Finance Corp., supra.*

■ We believe that the jurisdictional requirements for bringing suit under Title

---

11. *Cf. Herbst v. International Telephone and Telegraph Corp.,* 72 F.R.D. 85, 93 (D.Conn. 1976).

12. This Court has, in the past, limited the reach of ancillary jurisdiction. *See Seyler v. Steuben Motors, Inc.,* 462 F.2d 181 (3d Cir. 1972) (Per Curiam) (ancillary jurisdiction not available to allow Pennsylvania plaintiff to bring suit against non-diverse defendant). *See also Johnson v. Better Materials Corp.,* 556 F.2d 131 (3d Cir., filed Nov. 23, 1976) (Per Curiam), *cert. denied,* 430 U.S. 967, 97 S.Ct. 1649, 52 L.Ed.2d 359 (U.S., Mar. 19, 1977) (New Jersey plaintiff may not bring action against non-diverse third-party defendant).

13. In the instant case the district court found that the International did not have an opportunity to engage in conciliation. *See* 143a. Murphy argues in its brief that the International was directly notified of the EEOC charge. *See* Appellee's brief at 21. The record adequately supports the finding to the contrary by the district court. *See* 427a.

VII should be liberally construed. *See Canavan v. Beneficial Finance Corp., supra,* citing *Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 503 F.2d 177 (1974). In *Evans* it was stated:

> "We do not believe that the procedures of Title VII were intended to serve as a stumbling block to the accomplishment of the statutory objective. To expect a complainant at the administrative stage, usually without aid of counsel, to forsee and handle intricate procedural problems which could arise in subsequent litigation, all at the risk of being cast out of court for procedural error, would place a burden on the complainant which Congress neither anticipated nor intended."

*Id.* at 183.

The purpose of requiring an aggrieved party to resort first to the EEOC is twofold: to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation. *See generally, Le Beau v. Libbey-Owens-Ford, supra; Fekete v. U. S. Steel Corp.,* 424 F.2d 331, 334 (1970); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711 (7th Cir. 1969).

■ As the *Evans* court noted much of the initiation of charges with the EEOC is done by laymen,[14] as was true in the instant case.[15] We cannot believe Congress intended that a person filing charges should accurately ascertain, at the risk of later facing dismissal of their suit, at the time the charges were made, every separate entity which in some way may have violated Title VII.

■ In the instant case, Glus in her complaint to the EEOC charged her employer and her local union with sex discrimination. Whether she could foresee at that stage in the proceedings the necessity and desirability of adding the International we cannot say. It would seem reasonable from the standpoint of the complainant that if voluntary compliance could not be obtained through the EEOC from her employer or her local union the addition of the International would make little, if any, difference. It should be noted that Article VIII, Section 1 of the International's Constitution provides, in part, "The membership of the Retail, Wholesale and Department Store Union shall function through locals chartered by International Executive Board . . ."[16] Of course, we do not suggest that where it can reasonably be expected full compliance will not be required. Factors which we believe the district court should look to are 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. Consideration of these factors should be initially in the hands of the district court. The goal of conciliation without resort to the already overburdened federal courts is of great importance and should not be lost. However, equally important is the availability of complete redress of legitimate grievances without undue encumbrance by procedural requirements especially when demanding full and technical compliance would have no relation to the purposes for requiring those procedures in the first instance. In our view the district court should evaluate the failure to name the party before the EEOC by consulting the four factors discussed *supra.*

---

14. *See Canavan v. Beneficial Finance Corp., supra.*

15. *See* 734a, 738a–739a.

16. International's Exhibit E, at 33.

We, therefore, remand the case at bar to the district court. The district court on remand should reconsider Murphy's contention that the plaintiffs in fact named the International in the charge to the EEOC. If the court concludes that it is unable to determine whether the International had in fact been named, or it finds that International had not been named in the charge, it should determine, in a manner consistent with the four factors we have outlined above, whether compliance was unnecessary. In respect to these alternatives the court may receive further evidence if it shall deem such course appropriate.

C. Equal Pay Act Issue

In its cross-appeal Murphy has made numerous contentions regarding the district court's refusal to find the International liable for contribution for violation of the Equal Pay Act, 29 U.S.C. § 206(d). Murphy has raised the same contentions in its cross-appeal in *Denicola v. G. C. Murphy Co., supra,* decided this day. In light of our remand in this case and our opinion in *Denicola,* we deem it unnecessary to comment further.

In view of our disposition, it would not be appropriate to address the other contentions raised by the parties, at least at this time.

## III. CONCLUSION

The case will be remanded to the district court for further proceedings consistent with this opinion.