William L. MAYO, Plaintiff,

v.

QUESTECH, INC., et al., Defendant.

Civ. A. No. 89–0987.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 27, 1989.

Thomas J. Curcio, Cohen, Dunn & Sinclair, Alexandria, Va., Lawrence Z. Lorber, J. Robert Kirk, Kelly Drye & Warren, Washington, D.C., for plaintiff.

Norman H. Singer, Daniel G. Grove, Keck, Mahin & Cate, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

In its present posture, this employment contract and discrimination dispute presents two questions that are as yet unsettled in this Circuit. First, because the individuals named in the complaint were not named by plaintiff as respondents in the Equal Employment Opportunity Commission ("EEOC") proceeding concerning his discrimination claim, the question arises whether they are proper defendants in plaintiff's Title VII[1] claim here. The second question is whether the "Whistleblow-

1. 42 U.S.C. § 2000e, *et seq.*

er" statute, 10 U.S.C. § 2409, affords plaintiff and others a private cause of action.

The matter is before the Court on defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P. The questions have been briefed and argued and are ripe for disposition. For the reasons stated here, the Court concludes that in the circumstances of this case, the failure to name the individual defendants as respondents in the EEOC proceeding is no bar to their being named here as Title VII defendants. Further, the Court concludes that the Whistleblower statute's language, legislative history and purpose all point persuasively to the absence of any private right of action.

### Facts [2]

This action arises from the discharge of plaintiff, William M. Mayo, from his position as President and Chief Executive Officer ("CEO") of defendant QuesTech, Inc. Mayo, a District of Columbia resident, alleges, *inter alia,* that his discharge violated Title VII and the federal Whistleblower statute.

QuesTech is a publicly-held Virginia corporation engaged in providing technical and professional services to the federal government, especially the Department of Defense and the National Aeronautics and Space Administration. At the time of Mayo's discharge, QuesTech employed approximately 1000 persons and had gross annual revenues of approximately $70 million. The individual defendants are variously Virginia and Maryland citizens who served as directors of QuesTech during the period relevant to plaintiff's claims. One, John L. McLucas, served as QuesTech's Board Chairman. Other director defendants held positions, subordinate to plaintiff's, as officers of QuesTech or as officers and directors of one or more of QuesTech's divisions or subsidiaries.

In early 1987, QuesTech began recruiting Mayo to become QuesTech's President and CEO. At the time, Mayo was President of Comsat General Corporation ("Comsat") and was earning an annual salary of $140,-000 plus substantial benefits. Mayo's position at Comsat was secure and he had no plans to leave that company or to look for other employment. To entice Mayo, QuesTech assured him that the President and CEO positions at QuesTech would provide him with an opportunity for significant professional, personal and financial growth. QuesTech told Mayo, however, that the company's needs would require Mayo to make a commitment to remain at QuesTech's helm for some minimum period of time. Negotiations followed. In March 1987, Mayo accepted QuesTech's offer to become President and CEO of the company, as well as a member of its Board of Directors for a period of no less than three years. Mayo's initial yearly compensation was set at $150,000 plus an annual director's fee of $20,000 and an annual incentive bonus based on the company's performance.

Plaintiff commenced his duties at QuesTech in May of 1987. During the year that followed, QuesTech posted its best-ever financial results. Profits for the first three quarters of 1988 substantially exceeded those for the same period in 1987. In recognition of this, QuesTech's Board raised Mayo's salary $15,000 per year.

During this period, Mayo initiated several actions to correct what he viewed as improprieties in the conduct of several QuesTech directors. Specifically, Mayo investigated reports he received from Chairman McLucas, one of the named director defendants, that one or more of the other individual director defendants [3] were having illicit sexual relationships with subordinate female employees of the company. The reports included information that in

---

**2.** Plaintiff's well-pleaded facts are accepted as true solely for the purpose of testing the legal sufficiency of the claims challenged by defendants' motion to dismiss. *See, Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Edwards v. Duncan,* 355 F.2d 993 (4th Cir.1966); *Canty v. City of Richmond Police*

*Dept.,* 383 F.Supp. 1396 (E.D.Va.), *aff'd,* 526 F.2d 587 (4th Cir.), *cert. denied sub nom, Canty v. Brown,* 423 U.S. 1062, 96 S.Ct. 802, 46 L.Ed.2d 654 (1976).

**3.** The director defendants are all male.

furtherance of those illicit relationships, the directors involved were diverting corporate funds to compensate the women either during, or upon dissolution of, the relationships. When Mayo confirmed the existence of some of these relationships and the related financial arrangements, he demanded that the directors involved halt the improper activities. Thereafter, Mayo continued his investigative efforts. In this connection he discovered that some of the individual defendant directors used abusive, sexually derogatory language with respect to female employees. Further, he learned that the illicit relationships interfered with employees' work performance and created a hostile and offensive working environment for all employees.

Mayo's investigation of improprieties at QuesTech was not limited to ferreting out illicit relationships and sexually harassing conduct; he also uncovered false or fraudulent claims or charges to the government by a QuesTech subsidiary in the course of administering federal government contracts and subcontracts. Mayo promptly and voluntarily disclosed the results of his investigation to the government. Thereafter, he continued to monitor and investigate whether QuesTech had made other false or fraudulent claims to the government. Mayo's investigation and reform activities also extended to the defendant director's disposition of their QuesTech stock holdings. Specifically, Mayo took action to address the failure of certain director defendants to disclose to the public their efforts to sell their substantial QuesTech stock holdings.

In March 1988, at the request of one or more of the director defendants, Mayo recommended to QuesTech's Board that one of the individual defendant directors, William E. Bigler, Jr., be terminated as Executive Vice–President/Finance and Administration, Secretary and·Treasurer of QuesTech, as a result of improper and abusive treatment of subordinate females employees. The Board accepted Mayo's recommendation and authorized QuesTech to enter into a resignation agreement with Bigler containing a provision obligating Bigler not to retaliate against QuesTech or any of its directors in connection with his resignation. Bigler accepted the agreement, resigned and vacated his corporate offices. But for reasons not yet in the record, he remained a director of QuesTech throughout the period relevant to this action.

Mayo's reform efforts understandably made him singularly unpopular with many of QuesTech's officers and directors. On October 28, 1988, QuesTech's directors convened a special Board meeting to consider Mayo's removal. Mayo was present at the meeting. As a result of this meeting, the Board voted to terminate Mayo, but gave no reason for this action. In response to his termination, Mayo filed an eight-count complaint in this Court against QuesTech and the directors alleging various violations of federal and state law.[4] The causes of action germane to this proceeding are claims under (i) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and (ii) the Whistleblower statute, 10 U.S.C. § 2409(a).[5]

Defendant moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Fed.R. Civ.P., or for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P. After hearing oral argument, the Court took the matter under advisement and directed the parties to submit supplemental memoranda addressing (i) whether certain individual de-

---

**4.** Plaintiff has fulfilled all applicable prerequisites for bringing this action pursuant to Title VII. On May 18, 1989, the EEOC issued plaintiff a "right to sue letter." *See* 29 C.F.R. § 1601.28.

**5.** The other causes of action alleged (i) violation of putative public policies concerning corporate director/officer conduct; (ii) violation of statutory and common law corporate director/officer duties to disclose certain activities; (iii) fraudulent inducement to contract; (iv) breach of express contract; (v) breach of *implied contract*; and (vi) breach of resignation agreement. Plaintiff filed an amended complaint on August 23, 1989 adding a ninth cause of action stating a claim of retaliatory discharge under provisions of the federal statute authorizing civil actions for false claims submitted to the government, 31 U.S.C. § 3730(h) (Supp.1989).

fendant directors are proper defendants in the Title VII claim where those defendant directors were not specifically named in the predicate EEOC proceeding; (ii) whether 10 U.S.C. § 2409(a) affords individuals a private cause of action; and (iii) whether the Court should decide plaintiff's state claims under the doctrine of pendent jurisdiction according to *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The parties each submitted supplemental memoranda and the issues are now ripe for disposition.

## ANALYSIS

### I. *Title VII's Naming Requirement*

■ Under Title VII, a civil action may be brought after administrative proceedings have ended or conciliation attempts have failed, only "against the respondent named in the [administrative] charge." 42 U.S.C. § 2000e–5(f)(1). Mayo's administrative charge in the EEOC named QuesTech, but not the individual director defendants. Whether this failure to name the individual defendants in the EEOC charge bars a subsequent civil action against them is a question that has never been squarely decided by the Supreme Court or the Fourth Circuit. But abundant authority from other circuits suggests that, under the facts of

this case, Mayo's failure to name the defendants specifically is not fatal to his present civil suit.

The threshold issue is whether the naming requirement is jurisdictional and, as such, not waivable.[6] *Zipes v. Trans World Airlines*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), teaches that filing a timely charge with the EEOC is not jurisdictional, but is subject to equitable considerations. The "failure to name" issue was neither presented nor addressed in *Zipes*. Nonetheless, other courts have interpreted *Zipes* to mean that the naming requirement is similarly not jurisdictional.[7] Courts have also implicitly held that a failure to name is not a jurisdictional prerequisite by allowing suits, under various circumstances, to go forward against parties not named in the EEOC charge. Thus, seven circuits[8] and various district courts in the Fourth Circuit[9] have relaxed the naming requirement and permitted individuals unnamed in the EEOC charge to be sued in civil actions (i) where there is either a "sufficient identity of interests" between the named and unnamed parties, *Gonzalez–Aller Balseyro v. GTE Lenkurt*, 702 F.2d 857, 859–60 (10th Cir.1983), or (ii) where the parties are considered "substantially identical" entities, *Sedlacek v. Hatch*, 752 F.2d 333, 334–36 (8th Cir.1985) (corporation and its subsidi-

**6.** It is beyond dispute that "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case and cannot be waived or otherwise conferred upon the court by the parties." *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992 (11th Cir.1982) (citing *People's Bank v. Calhoun*, 102 U.S. 256, 26 L.Ed. 101 (1880)).

**7.** *Tillman v. City of Milwaukee*, 715 F.2d 354 (7th Cir.1983); *Jackson v. Seaboard Coast Line, R.R.*, 678 F.2d 992, 1009 (11th Cir.1982) ("[a]lthough the [Supreme Court and the Fifth Circuit] have not had occasion to address the nature of each of Title VII's preconditions, we discern no rational basis for treating those that have not been considered from those that implicitly or explicitly have been held not to be jurisdictional"); *compare Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir.1977) (stating that the naming requirement is jurisdictional, but holding that the court may determine whether compliance with the naming requirement is otherwise necessary in the circumstances). Prior to the *Zipes* decision, some courts had held that the naming requirement was jurisdictional. *See eg.*,

*Le Beau v. Libbey–Owens–Ford Co.*, 484 F.2d 798 (7th Cir.1973); *Mickel v. South Carolina State Employment Serv.*, 377 F.2d 239 (4th Cir.1977); *Jamison v. Olga Coal Co.*, 335 F.Supp. 454 (S.D. W.Va.1971); *Sokolowski v. Swift and Co.*, 286 F.Supp. 775 (D.Minn.1968).

**8.** *Romain v. Kurek*, 836 F.2d 241 (6th Cir.1987); *Sedlacek v. Hatch*, 752 F.2d 333, 334–36 (8th Cir.1985); *Gonzalez–Aller Balseyro v. GTE Lenkurt*, 702 F.2d 857, 859–60 (10th Cir.1983); *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992 (11th Cir.1982); *Eggleston v. Chicago Journeyman Plumbers' Local 130*, 657 F.2d 890 (7th Cir.) *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir.1977); *Kaplan v. International Alliance of Theatrical & Stage Employees*, 525 F.2d 1354 (9th Cir.1975).

**9.** *McAdoo v. Toll*, 591 F.Supp. 1399 (D.Md.1984); *Jeter v. Boswell*, 554 F.Supp. 946 (N.D.W.Va. 1983); *Brewster v. Shockley*, 554 F.Supp. 365 (W.D.Va.1983); *Kelly v. Richland School District 2*, 463 F.Supp. 216 (D.S.C.1978).

ary partnership held to be a single employer owing to common management and ownership). While not deciding the issue, the Fourth Circuit has also intimated its willingness to relax the naming requirement. In *Alvarado v. Board of Trustees of Montgomery College*, 848 F.2d 457 (4th Cir. 1988), Judge Murnaghan, speaking for the panel, stated,

> The Fourth Circuit has not had occasion to decide whether to adopt the substantial identity exception but we note that language in *Chastang* was quoted with approval by the Fourth Circuit in dictum: "where there is substantial, if not complete identity of parties before the EEOC and the court, it would require an unnecessarily technical and restrictive reading of [the statute]" to deny jurisdiction.

*Alvarado*, 848 F.2d at 461 (citing *Chastang v. Flynn & Emrich Co.*, 365 F.Supp. 957 (D.Md.), *aff'd in relevant part*, 541 F.2d 1040 (4th Cir.1976)) (brackets in the original) (quoting *Equal Employment Opportunity Comm'n v. American Nat'l Bank*, 652 F.2d 1176, 1186 n. 5 (4th Cir.1981) (citations omitted)).[10]

In the absence of controlling Fourth Circuit authority, this Court finds persuasive the Third Circuit's analysis of the Title VII naming issue in *Glus v. G.C. Murphy*, 562 F.2d 880 (3d Cir.1977). The *Glus* court fashioned a four-pronged test to use in determining whether a suit against previously unnamed parties may proceed:

(i) Could the role of the unnamed party, through reasonable effort by the complainant, have been ascertained at the time of the filing of the EEOC complaint;

(ii) Are the interests of the named party so similar to those of the unnamed party's that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

(iii) Whether the unnamed party's interests are actually prejudiced by its absence from the EEOC proceedings; and

(iv) Whether the unnamed party has, in its relationship with the complainant, in some way led the complainant to believe that the named party was indeed the representative of the unnamed party.

*Glus*, 562 F.2d at 888 (3d Cir.1977). Of these four inquiries, the second and third are the most important, as the circuits agree that the purpose of the naming requirement is to "provide notice to the charged party and to permit the EEOC to attempt the voluntary conciliation of complaints." *Alvarado*, 848 F.2d at 460; *see also Long v. Florida*, 805 F.2d 1542 (11th Cir.1986); *Romain v. Kurek*, 836 F.2d 241 (6th Cir.1985); *Equal Employment Opportunity Comm'n v. American Nat'l Bank*, 652 F.2d 1176, 1186 (4th Cir.1981); *Bratton v. Bethlehem Steel*, 649 F.2d 658, 666 (9th Cir.1980); *Tillman v. City of Boaz*, 548 F.2d 592 (5th Cir.1977). According greater weight to these factors is also consistent with the settled principles that Title VII charges are to be liberally construed, *Kaplan v. International Alliance of Theatrical & Stage Employees*, 525 F.2d 1354 (9th Cir.1975) and that procedural precision is not required of lay complainants, *Alvarado*, 848 F.2d at 460. In sum, the test for determining whether the naming requirement bars a suit should focus not on pleading formalities, but on the equities involved in affording remedies to injured plaintiffs and providing procedural safeguards to defendants. The *Glus* test, with emphasis on the more important second and third prongs, accomplishes this.[11]

■ Applying the second and third prongs of the *Glus* test to the facts at bar

---

**10.** The *Alvarado* court went on to state that since it concluded that the identities of the named and unnamed parties were one and the same, it was "unnecessary to decide whether the suit against the [unnamed party] can be maintained through application of a 'substantial identity' exception or otherwise." *Alvarado*, 848 F.2d at 461.

**11.** The first and fourth prongs, aimed as they are at ferreting out certain reasons for not naming parties, are not pertinent here. If QuesTech had misled Mayo about the director defendants' roles in the discrimination, or if the circumstances served to conceal those roles, then these would be additional reasons to waive the naming requirement. But here, it is undisputed that

compels the conclusion that plaintiff's action against the unnamed director defendants should be allowed to proceed. It is readily apparent that the interests of the company and the director defendants in the subject matter of the EEOC complaint were so essentially similar that failure to name the director defendants in the EEOC complaint had no effect on the statutory goals of obtaining voluntary conciliation and compliance. Indeed, since the conduct of the director defendants was at the heart of the EEOC charge, they were not, as a practical matter, absent from the proceeding. They received a copy of the administrative charge and since defendants and QuesTech are represented by the same counsel, they were, in effect, represented at the administrative proceedings. Under these circumstances, the director defendants can make no credible claim that prejudice resulted from the failure to name them in the EEOC charge. To hold otherwise would transform the naming requirement into a trap for unwary lay complainants, a result at odds with Title VII's remedial goals. In sum, the naming requirement should serve as a bar to civil suit only where, as is not true here, (i) there is demonstrable prejudice to the unnamed parties or (ii) the interests of the named and unnamed parties are so distinct that inexcusable failure to name a party frustrates Title VII's conciliation goals.[12]

## II. *Private Rights of Action under 10 U.S.C. § 2409*

■ Determining whether the Whistleblower statute affords individuals a private cause of action properly begins with the statute's plain language. On its face, § 2409 does not expressly confer a private cause of action. It states, in pertinent part,

(a) Prohibition of reprisals—An employee of a defense contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a Member of Congress or an authorized official of the Department of Defense or the Department of Justice information relating to a substantial violation of law related to a defense contract (including the competition for or negotiation of a defense contract).

(b) Investigation of complaints—A person who believes that a person has be subjected to a reprisal prohibited by subsection (a) may submit a complaint to the Inspector General of the Department of Defense. Unless the Inspector General determines that the complaint is frivolous, the Inspector General shall investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person, the contractor concerned, and the Secretary of Defense.

(c) Nothing in this section may be construed to ... modify or derogate from a right or remedy otherwise available to the employee.

Section (a)'s prohibition of reprisals seems to fit plaintiff's claim that he was terminated in retaliation for his candid reports to

Mayo knew of the director defendants' roles in the alleged discrimination. It was, after all, the conduct of those defendants that lay at the heart of Mayo's discrimination complaint. His failure to name them in the EEOC complaint reflects nothing more than a layperson's ignorance of the statute's technical requirements. This reason is irrelevant to the determination whether the naming requirement should be waived.

12. The director defendants cited no contrary Fourth Circuit authority and this Court has found none. Worth noting, however, is that the instant case is easily distinguishable from *Gardner v. Gartman*, 880 F.2d 797 (4th Cir.1989) and *Portis v. Department of the Army*, 117 F.R.D. 579 (E.D.Va.1987). In *Gardner*, plaintiff's failure to name the Secretary of the Navy in the EEOC charge was fatal because it was jurisdictional. Unlike the director defendants here, the Secretary of the Navy, as head of the department of the Navy, is specified in 42 U.S.C. § 2000e–16(c) as a necessary party who *must* be served in the EEOC charge. *Portis* is similarly inapposite here. There, the complainant failed to name the Secretary of the Army in the EEOC complaint within the statutorily prescribed time period. An amended complaint purporting to correct the defect was held not to "relate back" pursuant to Rule 15(c), Fed.R.Civ.P. In *Portis* and *Gardner*, unlike the instant case, the naming requirement was a statutory prerequisite to suit.

the government concerning fraud by Ques-Tech. But the only statutory remedy provided for a violation of Section (a) appears in Section (b). That remedy is administrative investigation by the Inspector General of the Department of Defense, culminating in a report to the Secretary of Defense. The only further remedy information provided in the statute appears in Section (c) which expressly states that § 2409 does not alter existing rights or remedies with respect to retaliatory employment action against whistleblowers. In essence, apart from the inferences to be drawn from the existence of an administrative remedy, the statute is otherwise silent on whether it permits an implied private right of action to enforce its terms.

In these circumstances, it is appropriate to resort to the analysis prescribed in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). That decision established a test for use in ascertaining whether a private right of action is implicitly created in a statute otherwise silent on the question. The test is comprised of the following four inquiries:

(i) Is the plaintiff one of the class for whose especial benefit the statute was enacted?

(ii) Is there any indication of legislative intent, explicit or implicit, either to create or deny such a remedy?

(iii) Is implying a private cause of action consistent with the underlying purpose of the legislative scheme?

(iv) Is the cause of action one that is traditionally left to state law to remedy?

In the case of the Whistleblower statute, answers to these questions compel the conclusion that no private right of action should be implied. First, it is true that plaintiff is a member of the class the statute was designed to protect. But this factor is, at best, only indirect evidence of legislative intent and is not itself dispositive. Settled authority teaches that it is just a starting point in the analysis; other sources of legislative intent must be considered. *Universities Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 771, 101 S.Ct. 1451,

1461, 67 L.Ed.2d 662 (1981) ("the fact that the statute was designed to benefit a particular class does not end the inquiry; instead, it must also be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation"); *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981) ("the question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries"); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979) (the mere fact that the statute was designed to protect contractor employees does not require the implication of a private right of action).

More significant are the second and third *Cort* inquiries as they aim closer to the heart of legislative intent, which is, after all, the common focus of the *Cort* inquiries. As it happens, the statute's legislative history is informative on the private right question. The original House amendment included a provision that would

provide certain protection for employees of Department of Defense contractors who disclose information on violations of law, regulation, mismanagement, and abuse of authority, or a substantial and specific danger to public health or safety.

The Senate bill contained no such provision. Consequently, the Senate receded with an amendment that would

(1) provide that a contractor employee may not be discriminated against as a reprisal for disclosing substantial violations of statutory law to a Member of Congress or the Department of Defense or Justice and (2) requires the Inspector General to investigate and report on allegations of such reprisals.

House Conf.Report No. 99–1001, 99th Cong.2d Sess. *reprinted in* 1986 U.S.Code Cong. & Admin.News 6413, 6566–67. This narrower Senate version ultimately won the approval of both houses of Congress and was enacted. Thus, it is clear that the broader administrative relief initially suggested in the House bill was rejected and replaced by a narrower remedy. Given

Congress' apparent intent to limit the statute's administrative remedy, it seems unreasonable, if not illogical, to infer that Congress nonetheless intended, by its silence, that the statute include the broad remedy of a private right of action. A more logical, and hence reasonable, inference is that Congress, by its silence and by its provision of a carefully tailored administrative remedy, intended no private action under § 2409. Congressional silence, in this context, speaks volumes against the implication of a § 2409 private right. Had Congress intended or contemplated a private right, one would expect the legislative history to include consideration of such issues as jurisdiction, venue, remedies, jury right, concurrent state court jurisdiction, and confidentiality of procurement specifications. Instead, there is nothing in the legislative record on these issues. This silence is deafening; it calls for rejection of any implied § 2409 private action.

Significant, too in the analysis is Section (c), where Congress explicitly expressed its intention that the statute not be construed to affect or limit any remedies otherwise available to aggrieved parties. This section reflects both Congress' awareness of the existence of common law remedies and of its intention neither to supplant nor supplement them. Further, it seems reasonable to conclude that had Congress intended to create a private action, Section (c) would have been the logical place to do it. The conspicuous absence of any such provision signals Congress had no such intention.

Statutory purpose also provides no support for the implication of a private cause of action. Close scrutiny of the statute's history and context leads to the conclusion that the statute's purpose is to subject allegations of retaliatory employment actions against whistleblowers to administrative review.[13] This purpose neither calls

for, nor supports, the implication of a private right.

The fourth *Cort* factor addresses whether the cause of action is one "traditionally relegated to state law." *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted). Two points are imbedded in this fourth factor. First, Congress is not likely to have intended the implication of a private right where there already exist other remedies, whether federal or state. And second, Congress is similarly unlikely to have intended the implication of a private right where that right might conflict with, or intrude upon, an area typically governed by state law. Neither point, applied here, offers any substantial support for the implication of a private federal action for whistleblowers. This is particularly clear in light of Congress' creation of *qui tam* actions under 31 U.S.C. § 3730 (Supp.1989). That section explicitly provides a remedy for employees who have been the subject of adverse employment actions undertaken in retaliation for disclosure of an employer's making false or fraudulent claims against the government. The section reads,

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained

---

13. A statute's purpose may be stated in varying degrees of abstraction, from the more general to the more specific. In using statutory purpose as a basis for inferring legislative intent, the correct level of abstraction must be chosen. In this case, the statute's language and the fact that it

was part of an appropriations package entitled the "National Defense Authorization Act for Fiscal Year 1987," which was not itself aimed broadly at procurement integrity, point persuasively to a more specific statement of statutory purpose.

as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h) (Supp.1989).[14]

Moreover, standard state breach of contract remedies are, of course, also available. Thus, if an employee is terminated or otherwise subjected to adverse employment action in violation of the terms of her or his employment contract, the employee may bring a breach of contract action under state law. Alternatively, in the absence of an employment contract, where the employment is at will, state law controls the means for addressing improper employment actions. In that event, to imply a private right of action in the federal Whistleblower statute would be to intrude upon the state's policy choices regarding the regulation and resolution of employment termination disputes where the employment is at will. In the instances in which Congress has nonetheless thought it appropriate to displace state policy choices, it has done so explicitly, with great care and particularity. *See eg., Qui Tam*, 31 U.S.C. § 3730(h); Title VII, 42 U.S.C. § 2000e *et seq.* It seems clear, therefore, that the fourth *Cort* factor, as the other factors, does not weigh in favor of implying a private right of action in this case. In sum, the absence of any evidence of a legislative intent to afford a private right of action, combined with the availability of other remedies, especially 31 U.S.C. § 3730(h), contradicts Mayo's contention that a private right of action should be implied in this case.[15]

For these reasons, defendants' motion to dismiss Count I is denied and defendants'

motion to dismiss Count III is granted. An appropriate order has issued.

---

**14.** No issue concerning the precise contours of the § 3730(h) remedy is before the Court. Worth noting, however, is the existence of legislative history suggesting that the remedy may be limited. *See* S.Rep. No. 345, 99th Cong., 2d Sess. (34), *reprinted in*, 1986 U.S.Code Cong. & Admin.News, 5266, 5299; 132 Cong.Rec. H9389 (daily ed. Oct. 7, 1986); 132 Cong.Rec. H6479–82 (daily ed. Sept. 9, 1986).

For a case discussing *qui tam* actions, *see Erickson v. American Inst. of Biological Sciences,* 716 F.Supp. 908 (E.D.Va.1989).

**15.** For a case in which the context required the opposite conclusion resulting in the implication of a private right of action *see Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condominium Council of Co–Owners,* 721 F.Supp. 775 (E.D.Va. 1989).