**ROLF ANDERSON, Plaintiff**

v.

**NORBERT LORCK–SCHIERNING, et al., Defendants**

Civil No. 80-45

District Court of the Virgin Islands

Div. of St. Thomas and St. John

September 9, 1983

RHYS HODGE, ESQ., St. Thomas, V.I., *for plaintiff*

RICHARD RENEHAN, ESQ., Boston, Mass., *for defendant*

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action came on for trial on January 26, 1983. Upon consideration of the testimony adduced, the exhibits, and the submitted post-trial memoranda, the Court, pursuant to Rule 52, makes and files the following findings of fact and conclusions of law.

# FINDINGS OF FACT

(1) Plaintiff was employed by defendant West Indies Distillers, Ltd., in St. Thomas, Virgin Islands in 1963.

(2) West Indies Distillers, Ltd., was originally incorporated under the laws of the Virgin Islands in 1963; and was formally dissolved in 1977. It was a wholly owned subsidiary of defendant H. H. Pott Nfgr. GmbH and Co. Rumhandelshaus (the Pott partnership), a limited partnership organized under the laws of the Federal Republic of Germany with its principal place of business in Flensburg, Federal Republic of Germany. At all relevant times, defendant Norbert Lorck-Schierning was the managing partner of the Pott partnership, and the President of West Indies Distillers, Ltd.

(3) In 1971, plaintiff was named Vice President and General Sales Manager of Distim, Inc., a corporation organized under the laws of the state of New York in 1966 with its principal place of business in New York, New York. At the time, defendant Lorck-Schierning was both the sole shareholder and the President of Distim, Inc.

(4) During the time periods in question, West Indies Distillers, Ltd., and Distim, Inc., were each entities affiliated with the Pott Partnership, with West Indies manufacturing rum products in St. Thomas and Distim purchasing and then distributing those products in the continental United States.

(5) The minutes of a meeting of "the Whole Pott-Group" and dated April 23, 1978 (Exhibit 14) indicate that the defendant Pott partnership assumed the role of directing policies for the entire group, which included both West Indies and Distim.

(6) On March 23, 1972, plaintiff was discharged from his position with Distim.

(7) On April 30, 1972, plaintiff brought suit against his former employer Distim, Inc., in the Commonwealth of Massachusetts alleging a wrongful termination of his employment contract. Andersen v. Distim, Inc., Civil No. 671779, Superior Court of Suffolk County. (Exhibit 1).

(8) In a letter from defendant Lorck-Schierning dated March 28, 1972, and addressed to wholesale customers, it was announced that the corporate name of "Distim" would soon be changed to "H. H. Pott Distillers, Ltd." The latter entity was referred to as the "Importing Division" of the affiliated Pott enterprises. (Exhibit 19.)

(9) On April 14, 1972, the corporate name of "Distim, Inc." was in fact changed to "H. H. Pott Distillers, Inc."

(10) Sometime in 1973, West Indies Distillers, Ltd., ceased production of rum products and began liquidating its assets. It was eventually dissolved as a corporate entity in 1977.

(11) Sometime in 1975, Distim, Inc., ceased business operations.

(12) The final balance sheet of H. H. Pott Distillers, Ltd. (formerly Distim, Inc.) dated September 19, 1975 (Exhibit 3) shows that approximately $129,000.00 was owed by West Indies Distillers at the time of dissolution. The testimony of Robert M. Peers, attorney for and corporate secretary of Distim, Inc., established that this amount was the result of a credit to Distim in a so-called "intercompany account" maintained between Distim and West Indies Distillers. The evidence established that this debt was never satisfied.

(13) There was evidence adduced that both Distim (and its successor, H. H. Pott Distillers) and West Indies made other use of what was designated as an "intercompany account."

(14) There was other evidence that the prices charged to Distim (and its successor) for distribution were determined, on occasion, by the German Pott partnership. A memorandum from the German entity dated April 8th, 1971 (Exhibit 13) shows that uniform pricing policies were set on behalf of both the manufacturing (West Indies) and the distributing (Distim) entities of the Pott Rum enterprise.

(15) The testimony of Rolf Andersen, as corroborated by a letter from the Vice President of West Indies dated January 27, 1975 (Exhibit 20) established that at least until June, 1974 goods manufactured and sold from the St. Thomas facility of West Indies Distillers were invoiced to customers for payment either directly to H. H. Pott Distillers or to the "intercompany account."

(16) There was credible testimony and documentary evidence that defendant Lorck-Schierning directed policies in a uniform fashion on behalf of what was referred to as "the Whole Pott Group", and which included both West Indies and Distim as "foreign companies." See Exhibit 14, "Minutes of the Meeting of the Whole Pott-Group on April 23, 1971."

(17) On April 18, 1978, a Master appointed in the Massachusetts action commenced by Andersen filed a report in which he found damages for Andersen. As of that date, Distim, Inc., its successor, H. H. Pott Distillers, Ltd., and West Indies Distillers, Ltd., had either ceased operations or had been formally dissolved.

(18) On April 21, 1978, defendant Lorck-Schierning, in his official capacity and on behalf of the dissolved West Indies Distillers, Ltd., negotiated the sale of the distillery, related personal assets and underlying real property owned by West Indies in St. Thomas, Vir-

gin Islands. The agreed purchase price was $1,000,000.00. Under the terms of the purchase agreement, the buyer, Roger Harrison, was granted the right to designate a corporate nominee to whom title in the property would be transferred.

(19) Under paragraph 8 of the agreement of purchase and sale, the buyer was granted a sixty-day grace period in which to withdraw from the transaction.

(20) On April 26, 1978, Crown Harbor Distillers, Inc., was incorporated under the laws of the Virgin Islands. The sole corporate purpose of this entity was to act as the nominee or designee for the purchaser of the distillery property under the terms of the agreement of sale. To this date the only asset of Crown Harbor Distillers, Inc., is the former West Indies Distillery property in St. Thomas.

(21) On April 27, 1978, defendant Lorck-Schierning transferred title to the St. Thomas property from West Indies Distillers, Ltd., to Crown Harbor Distillers, Inc. The deed of transfer described the property as follows:

> Parcels Nos. 28b, 29bb, 50BB & 50c Kronprindsens Gade, Kronprindsens Quarter, St. Thomas, U.S. Virgin Islands; consisting of 71,107 square feet, more or less as shown on P.W.D. No. F9-581-T60.

(Exhibit 18.)

(22) The testimony of Frederick Rosenberg—who served as an attorney for both West Indies Distillers, Ltd., and Crown Harbor Distillers, Inc.—established that the contract of sale was not fully executed, as the individual purchaser (Harrison) exercised his rights under paragraph 8 of said agreement and withdrew his offer of purchase.

(23) There was uncontroverted evidence that since the date of the buyer's withdrawal, Crown Harbor Distillers, Inc., has never issued stock, has never held an election of officers or board members, and has carried out no corporate activity. Crown Harbor never made a payment on the promissory note originally given to West Indies as partial consideration for the transfer of the distillery property. In addition on July 6, 1978, Mr. Rosenberg (apparently on behalf of West Indies) took delivery of the stock record book, the corporate record book and other indicia of ownership. (Exhibit 6.)

(24) From the testimony of Mr. Rosenberg and the power of attorney executed between him and defendant Lorck-Schierning on April 10, 1978 (Exhibit 4), it can be inferred that Lorck-Schierning

directed that certain acts be carried out on behalf of both West Indies and Crown Harbor.

(25) The Court finds that beneficial ownership of the St. Thomas property lies with the principals of the now dissolved West Indies Distillers, Ltd., though record title is held by Crown Harbor Distillers, Inc.

(26) On May 31, 1979, judgment was entered against Distim, Inc., in the Massachusetts action by Thomas D. Morse, Associate Justice of the Superior Court, in the amount of $53,816.34 with interest thereon from April 28, 1972. (Exhibit 1.)

(27) On September 20, 1979, execution was issued against Distim, Inc., by the Massachusetts court in the amount of $81,919.77. (Exhibit 1.)

(28) The present suit seeks to enforce the judgment obtained in the Massachusetts action and to satisfy the judgment out of the real and personal property described in the deed of April 27, 1978.

*Conclusions of Law*

(1) The Court has jurisdiction over this action by virtue of 5 V.I.C. §§ 1261–1272 ("Declaratory Judgments"), and the cause of action is recognized by sections 99 and 100 of the Restatement (Second) of Conflict of Laws (1971).

(2) The legal question presented is whether any or all of the named defendants may be held liable for the judgment debt of the now dissolved Distim, Inc.

(3) A corporate entity may be held liable for the obligations of an affiliated entity, where the latter is a mere instrumentality dominated and controlled in substance by the former. The separateness of the corporate entities will be disregarded by courts where the following indicia are present: (1) The two entities are closely related in the similarity of corporate purposes, conduct, officers and shareholders; (2) the two entities are owned and/or controlled by a common owner or manager who exerts pervasive control in a uniform manner and (3) failure to disregard the separate identity of the two entities would result in an injustice to a third party. See Fletcher, Cyclopedia of Corporations, § 43 (1974).

(4) Although the mere fact of overlapping ownership or management is not alone a sufficient basis to pierce the corporate veil, corporate separation can properly be ignored where there is such a commingling of property rights and interdependence in the activities of the entities that they actually function as one business

205

unit. In the present case, the uniformity in pricing policy, the existence of the so-called intercompany account, the issuance of invoices by the distributor on behalf of the manufacturer, and the forebearance in collecting a debt owed to the distributor provide ample evidence that the relationship between West Indies Distillers, Ltd. and Distim-H. H. Pott was not, as defendants urge, an arms-length contractual relationship between a seller and a distributor. The technicalities of corporate independence will be ignored where, as in this case, the affiliated entities engage in a continuous and "ready interchange in financial, managerial and personnel matters," Dickson v. Hertz Corp., 559 F.Supp. 1169, 1176 (D.V.I. 1983) (jurisdictional presence imputed to franchisor corporation through its franchisee) and where they are in reality mere departments or branches in a single integrated business enterprise. See, e.g., Allbright Texas, Inc. v. Simmons, 501 S.W.2d 145 (Tex. Civ. App. 1973); Holland v. Joy Candy Manufacturing Co., 145 N.E.2d 101 (Ill. App. Ct. 1957).

(5) In addition to the interdependence of several Pott entities, there is sufficient evidence on this record to conclude that the several affiliates were subject to uniform and pervasive control by a common manager, namely the German Pott partnership through its managing partner defendant Lorck-Schierning. The minutes of the April 1971 meeting of the "Whole Pott Group", the several directives on price policies and on liquidation and the submission of consolidated financial statements add support to the legal conclusion that West Indies on one hand, and Distim-H. H. Pott Distillers on the other, were mere components of a common enterprise directed by Pott's Flensbury headquarters for the purpose of producing and marketing rum in the United States.

(6) With respect to defendant Crown Harbor Distillers, Inc., the evidence overwhelmingly supports the conclusion that it is a corporation in name only, established and controlled by the principals of the dissolved West Indies firm, and that the obligations of the latter may properly be attributed to it.

(7) The third criterion for piercing the corporate veils of the various corporate defendants herein is also present; namely avoidance of an injustice to a legitimate judgment creditor. We reject defendants' contention that the Court must find fraud in order to find the affiliated entities liable for the obligation of Distim. The cases uniformly hold that the corporate shield may not properly be asserted to evade a legal obligation or perpetrate an injustice. Fletcher, supra at § 45. Without making specific findings of fraudu-

lent intent or transfers in fraud of creditors, the Court may properly infer from the date on which the Distim name change occurred, the dates on which liquidation of Distim and West Indies was commenced and particularly the dates on which the attempted transfer of the St. Thomas property to a shell corporation took place, that the defendants intended to frustrate the execution of the Massachusetts judgment. Shielding defendants from responsibility for that judgment debt would be unjust and in contravention of public policy.

■ (8) On the basis of the foregoing, each of the named defendants herein is jointly and severally liable on the Massachusetts judgment, and that property purportedly transferred to Crown Harbor Distillers, Inc., by deed dated April 21, 1978, may properly be held in satisfaction of that liability.

(9) Judgment should be entered in favor of plaintiff Rolf Andersen in the amount of $81,919.77, together with interest thereon computed from September 30, 1979, together with costs, including reasonable attorneys' fees.

Let Judgment enter in accordance with the foregoing.