**LYDIA BROWN, Plaintiff**
**v.**
**VITELCOM, INC., VIRGIN ISLANDS**
**TELEPHONE CORP., ATLANTIC**
**TELE-NETWORK, INC., and**
**ATLANTIC TELE-NETWORK CORP., Defendants**

Civ. No. 1995-142

District Court of the Virgin Islands

Division of St. Thomas and St. John

April 26, 1999

PEDRO K. WILLIAMS, ESQ., St. Thomas, U.S.V.I., *for plaintiff*

BENNETT CHAN, ESQ., St. Thomas, U.S.V.I., *for defendants*

MOORE, *Chief Judge*

## MEMORANDUM

Plaintiff Lydia Brown ["Brown"] seeks summary judgment against defendants Vitelcom, Inc. ["Vitelcom"], Virgin Islands Telephone Corp. ["VITELCO"], Atlantic Tele-Network, Inc. ["ATN Inc."], and Atlantic Tele-Network Corporation ["ATN Corp."], alleging that they unlawfully discriminated against her on the basis of national origin or race. The defendants have opposed this motion and filed two counter-motions for summary judgment. The Court has jurisdiction over this case under 28 U.S.C. § 1331, and will deny all three motions because the undisputed facts lend support to both parties' contentions, and material facts remain in dispute.

## FACTUAL SUMMARY

The Court briefly will recite the central, undisputed facts. Lydia Brown ["Brown"] is a black woman from Dominica who worked as a senior account executive for Vitelcom, a Virgin Islands corporation that sells and services telephone communication systems. As a senior account executive, Brown sold Vitelcom products, trained customers to use Vitelcom equipment, and performed "follow-up" customer service duties. In 1990, Vitelcom recognized Brown as its first salesperson to secure more than one million dollars' worth of product sales in one year.

Much of Brown's earnings came from commissions, even though she received a yearly salary of $30,000 and a benefits package. Vitelcom calculated commissions by assigning sales quotas to its salespersons. If Brown's monthly sales equaled $44,000, Vitelcom

254

would pay her 3.5% commission on those sales. If Brown met her full quota of $55,000 in monthly sales, she would obtain 5.0% in sales commissions, and if she sold more than $60,000 of Vitelcom products in one month, she would earn a 5.5% sales commission. Finally, if Brown met her yearly quota of $660,000 in sales, she would receive 7.0% in commission.

In addition to these payments, Brown occasionally received ATN Inc. stock as compensation. ATN Inc. was a communications holding company incorporated in Delaware that owned both V.I. Tele-Com, a long-distance telephone service provider in the Virgin Islands, and defendant ATN Corp., parent corporation of Vitelcom as well as VITELCO, the Virgin Islands' local telephone service provider. ATN Inc. acknowledged Vitelcom as a subsidiary corporation in its consolidated financial statements and 1992 Annual Report. Two of ATN Inc.'s directors, Neil Prior and Jeffrey Prosser, also sat on Vitelcom's corporate board. These two men reportedly owned 60% of ATN Inc. and Vitelcom.

Brown's employer, Vitelcom, hired ATN Inc. and VITELCO to perform certain functions. For example, it paid ATN Inc. 6% of its gross revenue for "advice" from ATN Inc.'s officers. In addition, Vitelcom paid VITELCO for personnel services, data processing, billing collection, hardware supply, and public relations. Consequently, Vitelcom employees such as Brown were required to address payroll-related complaints to VITELCO officials. Vitelcom employees occasionally received instructions from ATN Inc. director Neil Prior or memoranda from ATN Inc. employees such as Philip Wong, who was assistant comptroller of ATN Inc. and its subsidiaries.

Employees of ATN Inc. subsidiaries like V.I. Tele-Com and VITELCO received compensation packages similar to that which Vitelcom paid Brown. For example, V.I. Tele-Com agreed in 1992 to pay a salary, commission on sales, and benefits to sales representative Beth Feiger ["Feiger"], a white woman from the continental United States.

In 1993, Vitelcom assigned Brown and another black West Indian named Theresa Thomas ["Thomas"] to pursue sales at K-Mart in St. Thomas and St. Croix, respectively. After Brown failed to procure Vitelcom sales from K-Mart in St. Thomas, V.I. Tele-Com

"loaned" Feiger to Vitelcom as a "part-time" employee to pursue sales from K-Mart on both islands. There was no written employment contract between Feiger and Vitelcom, but Feiger began to receive some correspondence at the company.

Feiger successfully obtained Vitelcom sales from K-Mart in St. Croix. Since Vitelcom did not require her to meet a sales quota, it paid her $22,440.50, comprised of a "finder's fee" of 7.5% commission on her sale to K-Mart, and an additional commission on a maintenance contract with another Vitelcom customer. Vitelcom account executives generally did not receive commission on maintenance contracts.

Thomas made her displeasure with these payments known to Vitelcom. ATN Inc. assistant comptroller Wong also questioned whether Vitelcom's payments to Feiger complied with established company policy. In response, Vitelcom supervisor Ezra Gomez ["Gomez"] told Thomas and Brown that Vitelcom paid Feiger at a higher commission rate, imposed no sales quota, and gave her a commission on a maintenance contract because she was not a Vitelcom employee. Vitelcom then paid Thomas "a full sales commission" of one-half of the amount Feiger received for the K-Mart sale.

After conferring with ATN Inc. vice-president of human relations, Sharon Smalls, about Vitelcom's payment to Feiger, Brown filed a discrimination charge against Vitelcom, VITELCO, and ATN Inc. with the Virgin Islands Department of Labor ["VIDOL"] on September 16, 1993. Afterwards, Brown experienced difficulties at work. Gomez assigned Brown to work on a sales proposal for Banco Popular that he knew she could not produce due to the sophisticated knowledge required. Then, on October 18, 1993, Gomez criticized Brown's work on that sales proposal in a written memorandum placed in her employee file.

On October 27, 1993, Brown filed a retaliation charge with VIDOL. In 1994, VIDOL reported that there was probable cause to believe that the defendants discriminated against the plaintiff. Gomez later accused Brown of absenteeism, and Vitelcom redesignated several of Brown's customer accounts as "house accounts," meaning that any employee could pursue business with those customers, but no one would receive sales commissions. On May

15, 1995, the United States Equal Employment Opportunity Commission issued Brown a right-to-sue letter, and on August 10, 1995, the plaintiff filed this action. Brown has since received her first written negative work evaluation from Vitelcom.

## DISCUSSION

Brown has moved for summary judgment on her civil rights claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a) ["Title VII"], and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ["section 1981"]. She alleges that the defendants unlawfully discriminated and retaliated against her on the basis of national origin or race, and deprived her of the benefits of her contract with Vitelcom because of her race. The defendants have opposed this motion and filed two motions for summary judgment. In the first counter-motion, ATN Inc. and VITELCO argue that Brown cannot show that they are proper defendants. In the second counter-motion, all of the defendants contend that Brown cannot establish a prima facie case of discrimination.

■ Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Once the moving party properly supports its motion for summary judgment, the non-moving party must establish a genuine issue of material fact in order to preclude a grant of summary judgment. *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). When deciding whether the moving party has proved that no material factual dispute prevents judgment in its favor, the Court must regard the facts asserted by the non-moving party through affidavits and evidence as true and resolve any doubt in that party's favor. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080-81 (3d Cir. 1996) (citations omitted); *Desvi, Inc. v. Continental Ins. Co.*, 27 V.I. 408, 968 F.2d 307, 308 (3d Cir. 1992) ("The threshold inquiry is whether there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.") (citation omitted).

Drawing the appropriate inferences in each party's favor, the Court will deny the parties' motions because, despite the lengthy summary of undisputed facts above, neither party is entitled to judgment as a matter of law since material facts still remain in dispute.

## A. Are ATN Inc. and VITELCO Proper Defendants?

ATN Inc. and VITELCO first seek summary judgment on the grounds that they did not discriminate or retaliate against Brown, and were separate and independent corporations not liable for any acts attributable to Vitelcom. Since the former argument relies on the latter, the Court first will consider whether ATN Inc. and VITELCO are liable for the alleged discriminatory acts of Vitelcom.

In the past, this Court has employed different tests in evaluating whether to look behind the corporate veil, including the "agency" test, under which the plaintiff must demonstrate that the parent corporation exerted significant control over the subsidiary's decision-making process, *see In re Tutu Wells Contamination Litig.*, 846 F. Supp. 1243, 1262 (D.V.I. 1993), and the "alter ego" test, which permits the court to disregard corporate autonomy to prevent illegality or injustice, *see Anderson v. Lorck-Schierning*, 20 V.I. 200, 206 (D.V.I. 1983). The appropriate test for liability varies according to the facts alleged in the plaintiff's complaint. *See Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988).

The National Labor Relations Board established the "integrated enterprise" test to determine whether allegedly independent entities constitute a "single employer" under the National Labor Relations Act. *See Martin,* 17 F. Supp. 2d 357 at 362. Under this test, liability hinges on all of the circumstances surrounding the parent-subsidiary relationship, including (1) whether the subsidiary's corporate operations were merged, integrated, or interrelated with the parent corporation, (2) whether the parent corporation exercised centralized control of the subsidiary's labor relations, and (3) whether the subsidiary and parent corporations were commonly owned and managed. Under this approach, no one factor is conclusive. *See id.* at 362-63. As one court has stated, this test "is well suited to Title VII cases because it allows courts to read the term 'employer' in a [liberal] manner consistent with the purposes

of the [Civil Rights] Act." *Wood v. Southern Bell Tel. & Tel. Co.*, 725 F. Supp. 1244, 1248 (N.D. Ga. 1990).

The Court of Appeals for the Third Circuit directly addressed whether a parent corporation must defend the labor practices of its subsidiary, but did not adopt a specific test for liability in *Marzano v. Computer Science Corp.*, 91 F.3d 497 (3d Cir. 1996).[1] Its opinion examined most of the circumstances surrounding the parent-subsidiary relationship, including the factors present in the "integrated enterprise" test. *See id.* at 513-14; *see also Martin v. Safeguard Scientifics, Inc.*, 17 F. Supp. 2d 357, 364-68 (E.D. Pa. 1998) (employing criteria to determine whether majority stockholder was liable for corporation's discriminatory conduct). Numerous United States Courts of Appeals use the integrated enterprise test to determine whether one corporation should defend the employment practices of another, related company. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995); *Garcia v. Elf Atochem*, 28 F.3d 446, 450 (5th Cir. 1994); *Rogers v. Sugar Tree Prods., Inc.*, 7 F.3d 577, 582 (7th Cir. 1993); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993); *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987); *Baker v. Stuart Broad.*, 560 F.2d 389, 392 (8th Cir. 1977). Following the weight of authority, this Court will apply the multi-pronged integrated enterprise test to determine whether ATN Inc. or VITELCO are proper defendants. To reiterate, the Court will examine three factors: (1) the degree to which Vitelcom's operations were integrated with ATN Inc. and VITELCO, (2) whether ATN Inc. exercised centralized control over Vitelcom's labor relations, and (3) whether ATN Inc., VITELCO, and Vitelcom were commonly owned and managed.

## 1. Integration of Operations

Vitelcom and VITELCO were both wholly owned by ATN Inc.

---

[1] The *Marzano* Court applied New Jersey law since the plaintiff sued under the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-12(a), and the New Jersey Family and Medical Leave Act, *id.* § 34:11B-9. Since the question of corporate liability for other companies' discriminatory employment practices was a novel issue in New Jersey and the Third Circuit Court of Appeals, the *Marzano* Court's analysis relied largely on federal cases. *See Marzano*, 91 F.3d at 501, 513-14. Although Marzano's construction of New Jersey law is not controlling authority here, the Court of Appeals' decision lends support to this Court's conclusion.

259

through ATN Corp.,[2] but this "once-removed" parent-subsidiary relationship is not direct evidence of interrelated operations. "[W]hen a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer." *Marzano*, 91 F.3d at 513 (quoting *Flowers Indus., Inc.*, 814 F.2d at 980); *see also In re Tutu Wells*, 846 F. Supp. at 1261.

Regardless of the companies' kinship, however, the undisputed facts demonstrate that ATN Inc. and VITELCO's operations were interrelated with those of Vitelcom to some extent. Vitelcom paid ATN Inc. 6% of its gross revenue for advice from ATN Inc. officers, and paid VITELCO for personnel services, data processing, billing collection, hardware supply, and public relations. These transactions were significant even if paid for because ATN Inc. and VITELCO provided much of Vitelcom's corporate infrastructure and performed many of its tasks. *See McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933-34 (11th Cir. 1987) (ruling that parent was interrelated with subsidiary company under integrated enterprise test where parent issued subsidiary's checks and paid its bills); *EEOC v. Financial Assurance, Inc.*, 624 F. Supp. 686, 689-90 (W.D. Mo. 1985) (piercing corporate veil in Title VII case where parent shared services and equipment with subsidiary).

ATN Inc. and VITELCO took other steps that lend credence to Brown's assertion that Vitelcom's operations were integrated with those of its parent and sister corporations. ATN Inc. referred to Vitelcom as a subsidiary in its 1992 Annual Report and included Vitelcom's revenues in its consolidated financial statements. In addition, VITELCO distributed ATN Inc. stock to Vitelcom employees while implementing Vitelcom's employment benefit program. These are all additional indicia of corporate integration. *See Martin*, 17 F. Supp. 2d at 364; *Financial Assurance, Inc.*, 624 F. Supp. at 689-90. Even without drawing inferences in the plaintiff's favor, the Court cannot conclude from the undisputed facts that Vitelcom's operations were not integrated with those of ATN Inc. and VITELCO to some significant degree.

---

[2] ATN Corp. has not moved for summary judgment on the grounds advanced by ATN Inc. and VITELCO.

## 2. Centralized Control of Labor Relations

This second factor carries appreciable weight in the Court's analysis because the employment practices of the defendants are squarely at issue. *See, e.g., Martin*, 17 F. Supp. 2d at 363 (citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 994 (6th Cir. 1997)).

The undisputed facts show that ATN Inc. and VITELCO exercised some control over Vitelcom's labor relations. ATN Inc. directors occasionally gave Vitelcom employees specific orders. ATN Inc. also provided Vitelcom with paid "advice." In addition, Vitelcom required Brown to address payroll-related complaints to VITELCO officials, and ATN Inc.'s vice-president of human relations, Sharon Smalls, discussed Brown's concerns with her. Other ATN Inc. employees also sent Brown memoranda. Again, the Court does not have to draw any inferences in Brown's favor to find that ATN Inc. and VITELCO exercised some control over her workplace. That ATN Inc. and Vitelcom both employed assistant comptroller Wong, and V.I. Tele-Com "loaned" Feiger to Vitelcom, supports the inference that ATN Inc. and its subsidiaries coordinated their employment practices. *See Johnson*, 814 F.2d at 981; *Perry v. Manocherian*, 675 F. Supp. 1417, 1426 (S.D.N.Y. 1987) (holding that parent was interrelated with subsidiary company where parent and subsidiary shared employees in common); *see also Financial Assurance, Inc.*, 624 F. Supp. at 689-90; *Ratcliffe v. Insurance Co. of N. Am.*, 482 F. Supp. 759, 765 (E.D. Pa. 1980).

Behind these undisputed facts, which weigh in Brown's favor, a material factual dispute looms. Brown and the defendants dispute whether assistant comptroller Wong could refuse to approve expenditures requested by Vitelcom officers. This is a material issue of fact because Wong's power to control Vitelcom's finances or authorize compensation that might violate company policy bears directly on whether ATN Inc., VITELCO, and Vitelcom are interrelated companies, and would clarify whether some entity other than Vitelcom made the employment decisions that Brown now challenges. Although the plaintiff cannot show that ATN Inc. or VITELCO *exclusively* controlled "the day-to-day employment decisions" of Vitelcom, *see Frank*, 3 F.3d at 1363 (citation omitted),

ATN Inc. and VITELCO have not shown that they did not exercise some control over Vitelcom's labor relations.

### 3. Common Ownership and Management

ATN Inc. owns ATN Corp., which wholly owns Vitelcom and VITELCO. That officers of the latter two companies might report to ATN Inc. does not make ATN Inc. and VITELCO liable for Vitelcom's acts, for "the top officer of a subsidiary is, at some point, always held accountable to an officer of the parent corporation." *See Frank*, 3 F.3d at 1360; *see also Martin*, 17 F. Supp. 2d at 363 ("[I]t is never sufficient to establish only that a chain of command eventually ends at the parent's headquarters.") (citation omitted).

The undisputed facts indicate, however, that there was some identity of management between ATN Inc. and Vitelcom. ATN Inc. and Vitelcom's corporate boards had two directors in common, Neil Prior and Jeffrey Prosser, who apparently owned 60% of both companies. As an ATN Inc. director, Neil Prior had instructed Vitelcom employees to follow his directions.

■ Even giving the defendants the benefit of the "strong presumption" that Vitelcom's employees belonged to Vitelcom alone, they have not shown with undisputed facts that ATN Inc., VITELCO and Vitelcom are separate, autonomous corporate entities. Indeed, the record tends to suggest otherwise. ATN Inc. and VITELCO appear to have exercised a degree of "control that exceeds the control normally exercised by a parent corporation which is separate and distinct from the subsidiary entity." *See Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir. 1983). As the Court has a factual basis for inferring that ATN Inc. and VITELCO took a vital role in Vitelcom's infrastructure, activities, labor relations, ownership, and management, it cannot conclude as a matter of law that the three corporations did not constitute a "single employer." The Court will deny ATN Inc. and VITELCO's initial motion for summary judgment. *See Celotex v. Catrett*, 477 U.S. 317, 330 n.2, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) ("If there is any evidence in the record for any source from which a reasonable inference in the [non-moving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.") (citation omitted).

262

## B. Has Brown Established Her Entitlement to Relief as a Matter of Law?

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), the Supreme Court announced the analytical framework for reviewing federal employment discrimination claims based on circumstantial evidence. The Court distributed the evidentiary burdens between the plaintiff and defendant as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981) (citing *McDonnell Douglas*, 411 U.S. at 802-804).

The *McDonnell Douglas* framework applies to Brown's Title VII and section 1981 claims. Only the burden of production shifts; the ultimate burden of persuasion rests firmly with the plaintiff. *See id.* at 253. At this stage, however, Brown and the defendants each bear the burden of demonstrating that their respective motions for summary judgment should be granted due to the absence of any genuine issue of material fact. *See Aman*, 85 F.3d at 1074.

Brown contends that the undisputed facts establish a *prima facie* case of unlawful discrimination, retaliation, or interference with her contract rights; the defendants counter that Brown cannot prove her prima facie case as a matter of law. Since material factual disputes remain in this case, the Court will deny both parties' motions.

In *McDonnell Douglas*, the Court explained that a plaintiff could meet his *prima facie* burden under Title VII

by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802. Of course, these elements vary in "differing factual situations." *See Burdine*, 450 U.S. at 253 n.5; *McDonnell Douglas*, 411 U.S. at 802 n.13; *Torre v. Casio, Inc.*, 42 F.3d 825, 830 (3d Cir. 1994) ("the required showing to establish a prima facie case of disparate treatment by indirect evidence depends on the circumstances of the case") (citation and quotation marks omitted). To establish a *prima facie* case of compensation discrimination, "plaintiffs must demonstrate that they were performing work substantially equal to that of white employees who were compensated at higher rates than they were." *See Aman*, 85 F.3d at 1087.[3] Likewise, to prove a *prima facie* case of retaliation under Title VII, Brown must prove that she engaged in a protected activity and suffered adverse employment actions as a result. *See Griffiths v. Cigna Corp.*, 988 F.2d 457, 468 (3d Cir. 1993). By establishing either of these prima facie cases under Title VII, Brown will have a *prima facie* case of discriminatory interference with her contract rights under section 1981 because the elements of a discrimination claim under either statute are identical. *See Lewis v. University of Pittsburgh*, 725 F.2d 910, 915 n.5 (3d Cir. 1983).

■ Although the plaintiff's first hurdle, that of establishing her *prima facie* case, is not difficult to clear, *see Burdine*, 450 U.S. at 253, the Court cannot conclude as a matter of law that she will do so. First, there is a material factual dispute concerning Brown's

---

[3] This showing would allow the Court to infer that it is more likely than not that her employer's actions were motivated by impermissible reasons unless her employer explains otherwise. *See EEOC v. Metal Service Co.*, 892 F.2d 341, 348 (3d Cir. 1990) (citations omitted); *see also International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977) ("The importance of McDonnell Douglas lies . . . in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the act.").

unequal pay claim. Brown claims that Feiger's responsibilities "were the same as any other account executive." (*See* Pl.'s Mot. for Summ. J. at 4.) On the other hand, the defendants allege that Feiger did not train customers to use Vitelcom products or provide "follow-up" customer service, as senior account executives do. This dispute prevents Brown from establishing a *prima facie* case because Feiger's duties and the size or significance of Brown's customer service duties are the proper subjects of additional evidence at trial. At this point, the Court must infer in the defendants' favor that these customer service duties rendered Brown's job as senior account executive not "substantially equal to" Feiger's part-time sales role, and deny Brown's motion for summary judgment. In passing on the defendants' motion, however, the Court must adopt Brown's contention that Feiger's duties were substantially the same as her own and deny the requested judgment. Neither Brown nor the defendants are entitled to summary judgment on her compensation discrimination claim. Opposing motions for summary judgment do not give the Court license to decide the case when material issues of fact remain in dispute.[4]

Second, there is a material factual dispute concerning Brown's retaliation claim. The parties dispute whether Brown encountered adverse employment actions (such as designating several of Brown's customer accounts as "house accounts" or assigning her to complete sales proposals beyond her abilities) because she filed discrimination charges against the defendants.

Although a Title VII plaintiff may establish a *prima facie* retaliation case by showing that the adverse employment action occurred soon after the protected activity, *see Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989), the Court of Appeals has warned that Courts should not infer causation except on "unusually suggestive" facts. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997)

---

[4] Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. If any such issue exists it must be disposed of by a plenary trial and not on summary judgment.

*Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

("[E]ven if timing alone can prove causation where the discharge follows only two days after the complaint, the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events.").

Since courts generally draw factual inferences against the moving party at this stage of the proceedings, and Brown did not suffer an immediate, unmistakable reprisal from Vitelcom that might justify a departure from this general rule, the Court concludes that the plaintiff cannot establish the causation element of her *prima facie* retaliation case through summary judgment by relying on an inference from the timing of adverse action under *Jalil. See Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1309 (10th Cir. 1980) ("[T]he question of retaliation is particularly inappropriate for summary judgment disposition, since the primary issue is one of intent and motive."). The Court cannot resolve this causation dispute because the evidence that the defendants took adverse employment actions against the plaintiff after her complaint creates a factual issue regarding motivation that properly belongs to the factfinder.

■ Neither Brown nor the defendants are entitled to summary judgment on her retaliation claim. Since the Court cannot determine at this point whether Brown has established a *prima facie* case of discrimination or retaliation under Title VII, summary judgment on Brown's section 1981 claim is also inappropriate. *See Schurr v. Resorts Intern. Hotel, Inc.*, 16 F. Supp. 2d 537, 556 (D.N.J. 1998).

### C. Are the Defendants Entitled to Summary Judgment on Other Grounds?

The defendants also seek whole or partial summary judgment on the grounds that Brown has not stated a claim under Title VII or section 1981, and has not sued them within the limitations period for section 1981 claims. These arguments do not sway the Court.

■ Brown has stated a timely claim under Title VII and section 1981. As the foregoing *prima facie* case analysis demonstrates, Brown could convince a reasonable jury that the defendants violated either statute by taking adverse employment actions in response to her discrimination complaint or paying higher sales

commissions to a white employee born in the United States who pursued Vitelcom sales like senior account executives. Further, the statute of limitations for section 1981 claims in the Virgin Islands is six years. *See Harrigan v. Sebastian's on the Waterfront, Inc.*, 629 F. Supp. 102, 22 V.I. 218, 222 (D.V.I. 1986). Thus, even if Brown first learned of the defendants' discriminatory acts on June 4, 1993, as the defendants suggest, she could still file a timely section 1981 claim against them today.

Lastly, the defendants argue that the Court must dismiss ATN Corp. from this case because Brown failed to name it as a respondent in her Equal Employment Opportunity Commission ["EEOC"] discrimination charge. The Court does not concur. Although plaintiffs generally cannot sue parties that they have not named in an EEOC discrimination charge, this jurisdictional prerequisite is construed liberally in favor of complainants. *See Glus v. G.C. Murphy Co.*, 562 F.2d 880, 885, 887-88 (3d Cir. 1977). Under *Glus*, plaintiffs may sue any party not named in their EEOC charge if they can show that the following factors balance in their favor:

> 1) [W]hether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [defendant] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Glus*, 562 F.2d at 888; *see Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980) (*Glus II*) (noting that "no single factor is decisive"), *vacated on other grounds sub nom. Retail, Wholesale & Dept. Store Union v. G.C. Murphy Co.*, 451 U.S. 935, 68 L. Ed. 2d 321, 101 S. Ct. 2013 (1981).

The *Glus* factors weigh in Brown's favor. None of the defendants have articulated how ATN Corp.'s interests actually vary from those of ATN Inc. in this matter, or how those interests have been injured. Indeed, ATN Corp. has cooperated with ATN Inc., VITELCO, and Vitelcom in the collective defense of Brown's suit. Although Brown failed to discern that ATN Corp. was an integral part of Vitelcom's corporate family tree before filing her discrimination charge and complaint, her confusion is understandable given the similarity of names and the number of parent-subsidiary relationships in this corporate family.

■ Title VII mandates that an aggrieved party resort first to the EEOC so other parties have notice of the complaint and an avenue for voluntary compliance without resort to litigation. *See Fekete v. U.S. Steel Corp.*, 424 F.2d 331, 334 (3d Cir. 1970). Since ATN Corp. does not dispute that it had notice of Brown's discrimination charge, and its parent and subsidiary have defended its interests, it has suffered no apparent prejudice. The Court thus finds that there is a sufficient identity of interest between ATN Corp. and the original, named respondents to satisfy Title VII's jurisdictional prerequisite under *Glus*.

### CONCLUSION

The Court will deny ATN Inc. and VITELCO's motion for summary judgment because the undisputed facts do not fully support their contention that they should not be held liable for the alleged discriminatory acts of Vitelcom. In addition, neither Brown nor the defendants can demonstrate that there is no evidence in the record upon which a reasonable jury could conclude that their opponent is entitled to judgment. Further, the defendants cannot show that they are entitled to judgment on several other grounds. Accordingly, the Court will deny the parties' motions for summary judgment.

ENTERED this 26th day of April, 1999.